**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

RANDY MATTHEW CORDERO, CDCR #T-37551

Plaintiff,

vs.

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,

Defendant.

Case No.: 3:21-cv-1609-CAB-MSB

**ORDER: (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [Doc. No. 10] AND**

**(2) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) AND § 1915A(b)**

## I. Introduction and Procedural History

On September 17, 2021, Randy Matthew Cordero ("Plaintiff" or "Cordero"), a state inmate currently incarcerated at California State Prison, Los Angeles ("LAC")[1] and proceeding pro se, filed a document entitled "Petition for Writ of Habeas Corpus By a

/ / /

[1] At the time of filing, Cordero was an inmate at R.J. Donovan Correctional Facility ("RJD"). He has since been transferred to California State Prison in Los Angeles. *See* ECF Nos. 1, 18.

Person in State Custody 28 U.S.C. § 2254" in the United States District Court for the Central District of California. *See* ECF No. 1 at 1.

On April 1, 2021, based on preliminary review by the Court in the Central District, as "Order Regarding Screening" was issued. ECF No. 4. In the Order, the Court stated that the Petition was subject to dismissal for failure to state a cognizable claim for habeas relief. *Id.* at 2. The Screening Order gave Cordero three options: (1) to convert the Petition to a Civil Rights Complaint, (2) proceed on the Petition, or (3) request voluntary dismissal of the action without prejudice. *Id.* at 3–5. Cordero did not file a response to the Screening Order.

On May 21, 2021, the Court dismissed the petition. ECF No. 5. The Court found that the claims raised by Cordero "solely challenge the condition of his confinement in that the allegations relate to specific conditions at RJ Donovan Correctional Facility." *Id.* at 3. The Court further stated that "despite being notified" that he could consent to having the Petition "convert[ed] to a civil rights complaint under 42 U.S.C. § 1983," Cordero failed to "provide his consent." *Id.* at 4.

Cordero filed to two "letters" with the Court in response to the dismissal. *See* ECF Nos. 6 & 7. In them, he stated that he received the May 21, 2021 Dismissal Order but had not received the April 1, 2021 Screening Order providing him with an opportunity to choose an option. *See id.* Based on the letters, the Court granted Cordero leave to file a response to the Screening Order. *See* ECF No. 8. On June 17, 2021, Cordero filed a notice stating that he had been transferred from RJD to CSP Sacramento. ECF No. 9. Cordero filed a Request to Proceed In Forma Pauperis on June 29, 2021. ECF No. 10. On July 30, 2021, Cordero filed another letter in which he stated that "I mailed my 42 U.S.C. § 1983 to you on June 17, 2021 because the Court's Magistrate Judge gave me an order to respond by July 6, 2021." ECF No. 12 at 1. He filed another letter on August 3, 2021, referring to the "civil rights complaint" that he mailed to the court "on or around June 16, 2021," but that was not on the docket. *See* ECF No. 13. In that letter, Cordero alleged that on June 16, 2021 a correctional officer refused to process his legal mail as confidential.

*Id.* at 1. As a result, Cordero filed a grievance, after which, he alleges, RJD correctional officers began retaliating against him. *Id.*

On September 14, 2021, the United States District Court for the Central District of California construed Cordero's July 30, 2021 and August 3, 2021 letters as providing the necessary "informed consent" and converted the habeas action to a civil rights action pursuant to 42 U.S.C. § 1983. ECF No. 14 at 5. In the same order, the Court concluded that because Cordero's claims related to events which occurred while he was an inmate at RJD and contained references to correctional officers who appeared to work at RJD,[2] venue was proper in the Southern District of California and the case was transferred here. *Id.* at 6.

**II. Motion to Proceed In Forma Pauperis**

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[3] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, the Prison Litigation Reform Act's ("PLRA") amendments to § 1915 require that all prisoners who proceed IFP to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 83–84 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of

---

[2] In its Order, the District Court for the Central District noted that "although the individuals were not named as defendants, the correctional officers whom [Cordero] identifies in the Petition work at R.J. Donovan Correctional Facility and may reside in the southern District of California. ECF No. 14 at 5.

[3] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2021)). The additional $52 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

whether their action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires all persons seeking to proceed without full prepayment of fees to file an affidavit that includes a statement of all assets possessed and demonstrates an inability to pay. *See Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015). In support of this affidavit, the PLRA also requires prisoners to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 577 U.S. at 84.

In support of his IFP Motion, Cordero has submitted a copy of his California Department of Corrections and Rehabilitation ("CDCR") Inmate Statement Report. ECF No. 10. He has failed, however, to include a signed Prison Certificate completed by an accounting officer at the prison in which he is confined. *See id.* at 4–6; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. Based on the information contained in the trust account statement, Plaintiff's average monthly deposits for the past six months was $266.67 and the average monthly balance for the past six months was $731.66. *See* ECF No. 10 at 6. His available balance as of June 16, 2021, was $649.45. *See id*. Therefore, the Court **GRANTS** the motion and assesses an initial partial filing fee of $146.53, pursuant to 28 U.S.C. § 1915(b)(1). The remaining balance of the $350

/ / /

total fee owed in this case must be collected by the agency having custody of the prisoner and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

**III. Screening Pursuant to 28 U.S.C. § 1915(e)(2)(B) & 1915A(b)**

A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc*., 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-

unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B. California Department of Corrections and Rehabilitation

Cordero names only one Defendant in the caption of his Complaint, the California Department of Corrections and Rehabilitation ("CDCR"), an agency of the state of California. In general, the Eleventh Amendment prohibits private individuals from bringing suits for money damages against the state. U.S. Const. amend. XI; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72–76 (1996): *see also Taylor v. Westly*, 402 F.3d 924, 929 (9th Cir. 2005). A state may waive immunity to such suits, but "[i]n the absence of a waiver by the state or a valid congressional override, under the Eleventh Amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court." *Dittman v. California*, 191 F.3d 1020, 1025–26 (9th Cir. 1999); *Pittman v. Oregon, Employment Dept*., 509 F.3d 1065, 1071 (9th Cir. 2007). Federal courts recognize that States' Eleventh Amendment immunity were not abrogated when it enacted 42 U.S.C. section 1983 or other provisions within that act. *See Quern v. Jordan*, 440 U.S. 332, 341 (1979). Indeed, "[the Eleventh Amendment] jurisdictional bar applies regardless of the name of relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

Here, Cordero alleges "CDCR headquarters in Sacramento fails to stop abusing prison inmates with serious mental illness." ECF No. 1 at 5. Regarding prisoner lawsuits against the CDCR, the Ninth Circuit has held that the CDCR is an arm of the state and therefore immune from suit under the Eleventh Amendment. *Brown v. California Dept. of Corr*., 554 F.3d 747, 752 (9th Cir. 2009) (stating the "district court correctly held that the California Department of Corrections and the California Board of Prison Terms were entitled to Eleventh Amendment immunity"). While it is unclear what damages Cordero seeks against the CDCR; to the extent he may seek money damages, without a waiver of immunity or Congressional abrogation thereof, he is precluded from bringing suit against the state agency. *See Dittman*, 191 F.3d at 1025–26; *Pittman*, 509 F.3d at 1071.

C. Federal Rules of Civil Procedure 8 and 10

Plaintiff's Complaint also fails to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure and therefore fails to state a claim for relief. Rule 10(a) requires a plaintiff to name all defendants in the caption of the complaint. *See* Fed. R. Civ. P. 10(a) ("Caption; Names of Parties . . .. [T]he title of the complaint must name all the parties"). Rule 8 effectively requires a complaint to clearly convey "who is being sued, for what relief, and on what theory," *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Rule 8 requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'") (quoting Fed. R. Civ. P. 8(a)).

Here, the caption of the Complaint lists only the CDCR. ECF No. 1 at 1. In the body of the Complaint, Cordero refers to several individuals who appear to be RJD correctional officers, but it is impossible for the Court to conclusively discern which of the named individuals he seeks to name as defendants and as to which claims.[4] Cordero includes references to five individuals who appear to be RJD staff – F. Camacho, M. Bailey, Kako, Galaviz and Gutierrez. *Id.* at 5. He also includes allegations against RJD itself. *Id.* Because Cordero failed to name any individual correctional officers as defendants in the caption and it is unclear which individuals, if any, he seeks to name as to his individual claims, the Court dismisses the Complaint without prejudice. Fed. Civ. Pro. Rule. 10(a). Furthermore, because the Complaint fails to provide the purported defendants with "fair notice" of the particular claims being asserted against them and "the grounds upon which [the claims] rest[ ]," *Twombly*, 550 U.S. at 555 & n.3, it is also appropriate to dismiss the Complaint for violation of Rule 8. *See* Fed. Civ. Pro. Rule 8(a).

---

[4] This is likely due in large part to Cordero using a form intended for filing a writ of habeas corpus pursuant to 28 U.S.C.§2254 instead of a form for civil rights action under 42 U.S.C. § 1983. The Court includes a blank form complaint along with this Order.

Nonetheless, the Court will discuss the claims contained in the Complaint to the extent it is able to discern them. *See Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988) (court must construe civil rights cases filed in pro se liberally "and must afford plaintiff the benefit of any doubt").

D. Excessive Force

Construing the allegations contained in the Complaint liberally, it appears Cordero is attempting to allege excessive force was used against him while he was an inmate at RJD. Specifically, he states that Officers F. Camacho, M. Bailey, Kao, Galaviz and Gutierrez engaged in an "unlawful use of force" against him when he was pepper sprayed "3 times" on August 21, 2020. ECF No. 1 at 5. Cordero specifically alleges that Camacho "used unnecessary force by pepper spraying him. *Id.* at 6. In addition, he states that "while being escorted in mechanical restraints (handcuffs) Officer Galaviz assaulted me when he slammed my head into the wall of the housing unit and told me 'Fuckin' piece of shit Cordero, tellin' on us.'" *Id.*

Where excessive force is alleged, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). However, "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Id*. at 10 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights").) In order to violate the Eighth Amendment, the Defendant must use force which is "unnecessary" and "wanton." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

In determining whether a defendant has used excessive force in the prison context, the Court considers the following factors: (1) the need for application of force; (2) the relationship between the need and the amount of force used; (3) the extent of the injury inflicted; (4) the threat "reasonably perceived by the responsible officials"; and (5) "any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (citing

*Whitley*, 475 U.S. at 321). "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321. Thus, a constitutional violation can only be established if force was used "maliciously and sadistically for the purpose of causing harm." *Id*. at 319; *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (noting claims that an official has inflicted cruel and unusual punishment contain both an objective component as well as a subjective "inquiry into the prison official's state of mind").

To the extent Cordero seeks to allege excessive force claim against Bailey, Kako and Gutierrez, he has provided no facts regarding their specific conduct. As for Cordero's allegations that Camacho pepper sprayed him and Galaviz slammed him against a wall, even assuming he had properly named them as defendants, the allegations as pleaded lack sufficient detail as to the relevant factors to state an excessive force claim against them. *See Hudson*, 503 U.S. at 7.

E. Retaliation

Next, Cordero also appears to allege that the use of force was retaliation "directly in response to [his] correspondence" with private attorneys regarding staff misconduct. ECF No. 1 at 6. He states that Camacho conducted a search of his cell and "found the correspondence" and became "visibly upset." *Id.* At some point Camacho (and possibly other officers, including Bailey, Kako Galaviz and Gutierrez) "used unlawful and unnecessary . . . force by pepper spraying [him and his cellmate] three separate times while they were laying on the ground in the prone position," in retaliation for communicating with an attorney. *Id.*

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567–68. The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267–68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence).

The second element, causation, requires showing that the prison official intended to take the adverse action out of "retaliatory animus" to "silence and to punish" the inmate, as opposed to for some other reason. *Shephard v. Quillen*, 840 F.3d 686, 689–91 (9th Cir. 2016). Evidence probative of retaliatory animus includes proximity in time between the protected speech and the alleged adverse action, the prison official's expressed opposition to the speech, and the prison official's proffered reason for the adverse action was false or pretextual. *See id*. at 690.

As discussed above, it is not clear which individuals Cordero seeks to name as defendant(s) as to this claim. As to Bailey, Kako, Galaviz and Gutierrez, Cordero fails to allege they knew of his communications with the attorney. *See* ECF No. 1 at 5. Thus he has not adequately alleged causation. *See Shephard*, 840 F.3d at 689–91. To the extent he intended to name Camacho as defendant, Cordero also fails to state a claim. While he alleges that Camacho knew of his communication with an outside attorney, it is unclear when Camacho purportedly learned that information in relation to the subsequent pepper spraying. Mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where no evidence that defendants' disparaging remarks were made in reference to prior lawsuit). Further, Cordero must provide specific facts to adequately allege the use of force by the defendant, whether Camacho or someone else, did "not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567–68.

/ / /

/ / /

F. <u>Access to Courts</u>

Finally, Cordero alleges RJD "is deliberately interfering with and obstructing my access to the courts in violation of [his] First Amendment . . . rights." ECF No. 1 at 6. He states that on January 31, 2021 he attempted to mail his state petition for writ of habeas corpus to the San Diego County Superior Court. *Id.* He alleges that on February 8, 2021, he received the petition back stamped, "return to sender." *Id.* Cordero alleges that the five postal stamps on the envelop had not been "marked over by the meter from the U.S. Post Office [and] this gave me the impression that my state habeas petition never made it out of the prison." *Id.*

Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977). To establish a claim for any violation of the right of access to the courts, the prisoner must prove that there was an inadequacy in the prison's legal access program that caused him an actual injury. *See Lewis*, 518 U.S. at 349–51. To prove an actual injury, the prisoner must show that the inadequacy in the prison's program hindered his efforts to pursue a non-frivolous claim concerning his conviction or conditions of confinement. *See id*. at 351, 354–55.

Prisoners enjoy a First Amendment right to send and receive mail. *See Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)). A prison, however, may adopt regulations or practices which impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." *See Turner v. Safley*, 482 U.S. 78, 89 (1987). The *Turner* standard applies to regulations and practices concerning all correspondence between prisoners and to regulations concerning incoming mail received by prisoners from non-prisoners. *See Thornburgh*, 490 U.S. at 413. Prison officials may institute procedures for inspecting "legal mail," including mail sent from prisoners to the courts. *See Royse v. Superior Court*, 779 F.2d 573, 574–75 (9th Cir. 1986) (outgoing mail to court).

/ / /

As with his other claims, it is not clear from the face of the Complaint who Cordero seeks to name as a defendant. To the extent it appears he may be attempting to name RJD as a defendant for "deliberately interfering with and obstructing [his] access to the courts," he fails to state a claim for money damages. As discussed above, the CDCR and any state prison, like RJD, correctional agency, sub-division, or department under its jurisdiction, are not "persons" subject to suit under § 1983. *See Hale v. State of Arizona*, 993 F.2d 1387, 1398–99 (9th Cir. 1993) (holding that a state department of corrections is an arm of the state, and thus, not a "person" within the meaning of § 1983). And if by naming RJD as a party, Plaintiff seeks to sue the State of California itself, his claims are clearly barred by the Eleventh Amendment. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) ("There can be no doubt. . .that [a] suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless [the State] has consented to the filing of such a suit.").

G. Leave to Amend

In sum, Cordero has failed to provide a simple, concise, narrative that sets forth all of the injuries attributed to each individual defendant, *see* Fed. R. Civ. P. 8(a), and failed to name all defendants in the caption of the complaint. *See* Fed. R. Civ. P. 10(a). Even when Plaintiff's claims are liberally construed, he has failed to provide adequate information for the Court to determine whether the allegations could state cognizable claims for relief against individuals referenced in the Complaint. Accordingly, Plaintiff will be given leave to file an amended complaint in which he clearly names each defendant and links him or her to a specific legal claim and to the alleged injury, or injuries for which that defendant is alleged to be responsible.

Plaintiff must demonstrate how the incidents about which he complains resulted in a deprivation of his constitutional rights. *See, e.g., West*, 487 U.S. at 48. The amended complaint must allege in specific terms how each named defendant is involved. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the

claimed deprivation. *Id.*; *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980). Finally, the amended complaint must be complete in itself without reference to any prior pleading. This requirement exists because, as a general rule, an amended complaint supersedes the original complaint. *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'" (internal citation omitted)).

**IV. Conclusion and Order**

Good cause appearing, the Court:

1. **DIRECTS** the Clerk of Court to update the docket in light of the United States District Court for the Central District's Order (ECF No. 14) construing Cordero's "Petition for Habeas Corpus" as a "Prisoner Civil Rights Complaint" filed pursuant to 42 U.S.C. § 1983 and update the "Cause" and "Nature of Suit" portions of the docket accordingly;

2. **GRANTS** Plaintiff's Motion to Proceed IFP (Doc. No. 2) pursuant to 28 U.S.C. § 1914(a) and/or 28 U.S.C. § 1915(a);

3. **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the $146.53 initial filing fee assessed, if those funds are available at the time this Order is executed, and forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDNETIFIED BY THE NAME AND NUMBER ASSIGNED TO HIS ACTION.

4. **DIRECTS** the Clerk of Court to serve a copy of this Order on Kathleen Allison, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

5. **DISMISSES** this civil action sua sponte based on Plaintiff's failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

/ / /

6. **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures the deficiencies of pleading noted above. The Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: November 4, 2021

Hon. Cathy Ann Bencivengo
United States District Judge