# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY MATTHEW CORDERO, CDCR #T-37551,<br><br>                                    Plaintiff,<br><br>            vs.<br><br><br>F. CAMACHO, M. BAILEY, GALAVIZ, A. GUITIERREZ, KAKO, JOHNSON, DOES #1-20,<br><br>                                    Defendants. | Case No.:  3:21-cv-1609-LL-MSB<br><br>**ORDER: (1) DISMISSING DEFENDANTS FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND 28 U.S.C. § 1915A(b);**<br><br>**(2) DENYING MOTION FOR APPOINTMENT OF COUNSEL [ECF No. 25]; and**<br><br>**(3) DIRECTING U.S. MARSHAL TO EFFECT SERVICE PURSUANT TO 28 U.S.C. § 1915(d) AND FED. R. CIV. P. 4(c)(3)** |

## I.    Introduction and Procedural History

On March 10, 2021, Randy Matthew Cordero ("Plaintiff" or "Cordero"), a state inmate currently incarcerated at California State Prison, Los Angeles ("LAC") and proceeding pro se, filed a document entitled "Petition for Writ of Habeas Corpus By a Person in State Custody 28 U.S.C. § 2254" in the United States District Court for the

Central District of California and given the case number 5:21-cv-0444-JAK-ADS. *See* ECF No. 1 at 1.

Based on preliminary review, the Court in the Central District issued an "Order Regarding Screening" on April 1, 2021. ECF No. 4. Cordero did not file a response. On May 21, 2021, the Court dismissed the petition, concluding that the claims raised by Cordero "solely challenge the condition of his confinement in that the allegations relate to specific conditions at R.J. Donovan Correctional Facility." ECF No. 5. at 3. The Court further stated that "despite being notified" that he could consent to having the Petition "convert[ed] to a civil rights complaint under 42 U.S.C. § 1983," Cordero failed to respond. *Id.* at 4.

Cordero filed two "letters" with the Court in response to the dismissal. *See* ECF Nos. 6 & 7. In them, he stated that he received the May 21, 2021 Dismissal Order but had not received the April 1, 2021 Screening Order providing him with an opportunity to respond. *See id.* Based on the letters, the Court granted Cordero leave to file a response to the Screening Order. *See* ECF No. 8. Cordero filed a Request to Proceed In Forma Pauperis on June 29, 2021 (ECF No. 10), followed by two letters in which he suggested he was attempting to file a civil action pursuant to 42 U.S.C. § 1983. *See* ECF Nos. 12 & 13.

On September 14, 2021, the United States District Court for the Central District of California construed Cordero's letters as providing the necessary "informed consent" and converted the habeas action to a civil rights action pursuant to 42 U.S.C. § 1983. ECF No. 14 at 5. In the same order, the Court concluded that because Cordero's claims related to events which occurred while he was an inmate at RJD and contained references to correctional officers who appeared to work at RJD, venue was proper in the Southern District of California and the case was transferred here. *Id.* at 6.

On November 4, 2021, this Court granted Plaintiff's Motion to Proceed In Forma Pauperis and dismissed the Complaint for failing to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and § 1915A(b). ECF No. 19. The Court gave Plaintiff 45 days to file an amended complaint. *See id.* at 14. Plaintiff filed his First Amended Complaint ("FAC") on

December 17, 2021. ECF No. 22. He filed a Motion to Appoint Counsel on January 21, 2022 (ECF No. 25), and a Declaration in Support of his FAC on February 28, 2022. ECF No. 26 ("Pl.'s Decl.")

## II. Screening Pursuant to 28 U.S.C. § 1915(e)(2)(B) & 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his FAC requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc*., 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B.  Plaintiff's Allegations

Cordero alleges that on June 29, 2020, Parsons,[1] a correctional officer at RJD informed Cordero and his cellmate that another inmate, W.,[2] had attempted suicide. FAC, at 6. Parsons told Plaintiff that W. had overdosed on his own medication and suggested that Plaintiff may have provided it. *Id.* Cordero denied giving the inmate medication. Cordero informed Parsons that W. had told him he wanted to kill himself because Correctional Officer Parker[3] had insulted W. over the RJD public announcement system. *Id.* Cordero alleges Parsons was attempting to conceal Parker's misconduct by blaming Cordero and his cellmate for assisting W. with his suicide attempt. *Id.*

A few days later, on July 9, 2020, several inmates warned Cordero and his cellmate that correctional officers were telling inmates to avoid them. Cordero alleges this was because Cordero had confronted Parsons "about attempting to blame me and my cellie for inmate [W.'s] suicide attempt." *Id.* As a result, Cordero became afraid for his safety. *Id.* at 7. Cordero's Post-Traumatic Stress Disorder ("PTSD") was "triggered" and his "fear, anxiety and depression [were] amplified." *Id.* Cordero sought assistance from Mental Health Services but the social worker, Cabandon,[4] failed to help him with his emotional distress. *Id.* at 8. When Cordero reported misconduct by correctional officers to Cabandon, she was incredulous and failed to report his accusations to her supervisor. *Id.* Cordero also

---

[1] Parsons is not a named defendant.

[2] To protect his privacy the Court will refer to this inmate by his last initial only.

[3] Parker is not a named defendant.

[4] Cabandon is not a named defendant.

suggests that "mental health clinicians [at RJD] are over-familiar with officers," and this over-familiarity has led to "some mental health staff and some officers openly discussing" inmates' care. *Id.* Cordero filed a grievance against Parsons and Parker on July 9, 2020, given appeal #18480, which was initially signed and processed by Correctional Officer Camacho. *See* FAC at 44–45, 98–99. On September 17, 2020, the CDCR issued its ruling on Cordero's appeal #18480, finding no misconduct. *Id.* at 46.

Around that same time, Cordero had been "discretely reporting his observations of staff misconduct to attorneys" at a law firm representing California prison inmates in a class action lawsuit. *Id.* at 10. About "a week before" August 21, 2020, Cordero helped a fellow inmate named Lewis, who suffers from developmental disabilities, fill out a health care grievance form. *See id.* at 11; *see also* Pl.'s Decl. at ¶ 4. Cordero also gave Lewis the name and mailing address of the attorney who had been assisting him with his misconduct allegations. FAC at 11; Pl.'s Decl. at ¶¶ 4–5.

On August 21, 2020, Cordero saw several correctional officers approach Lewis' cell. FAC at 11; Pl.'s Decl. at ¶ 5. The officers—Defendants Camacho, Bailey, Kako, Galaviz and Gutierrez— appeared to be "confronting" Lewis "in an aggressive manner." FAC at 11. Cordero yelled out his cell door to the correctional officers: "Whatever you do, don't hurt [Lewis]. We're watching you." *Id.* Shortly thereafter, Bailey proceeded toward Cordero's cell. FAC at 11; *see also* Pl.'s Decl. at ¶ 6. When he got there, he stated "Hmmm, I thought I saw something" and then walked back to where the group of correctional officers were still gathered, outside Lewis' cell. FAC at 11. The officers handcuffed Lewis and escorted him out of the housing unit. Camacho, Bailey and Kako "roll[ed] up" Lewis' property because he was being sent to "the hole." *Id.*; *see also* Pl.'s Decl. at ¶ 7.

Shortly thereafter, Cordero looked out his cell and saw Camacho in the dayroom, going through Lewis' property and taking inventory when Camacho suddenly stopped. Camacho and Bailey then came back upstairs to Cordero's cell. FAC at 11. When they got there Camacho said, "Hey, I found that correspondence you gave to Lewis with your signature on it." *Id.* Cordero understood that to mean that Camacho had found a note

Cordero wrote for Lewis on how to fill out a grievance form. The note also included the name and mailing address of an attorney and included allegations of misconduct committed by Camacho.[5] Camacho was "visibly upset" and told Cordero that he needed to search his cell for a cell phone because the correspondence found in Lewis' cell purportedly had an Instagram address written on it. *Id.* at 11–12. Cordero denied having a cell phone or writing any Instagram address on the note found in Lewis' cell. *Id.* at 12. He asked to see the note and Camacho refused. Cordero then asked for a sergeant to be present for the search because he was afraid he was going to get beat up by correctional officers if he left his cell. *Id.* Ultimately however, Cordero and his cellmate were removed from the cell and taken to separate showers while Camacho, Bailey, Kako, Galaviz and Gutierrez conducted a cell search. *Id.* at 12.

At some point, Galaviz exited the cell carrying one of Cordero's "legal expanding envelopes," some homemade crafts and other personal items belonging to Cordero. *Id.* After the search, Camacho and Bailey escorted Cordero back to his cell. The cell was "completely trashed." Pl.'s Decl. at ¶ 10. Legal documents were strewn throughout the cell, photo albums were ripped up, and personal items were tossed in the toilet. FAC at 13. Cordero called for Camacho and asked why they ripped up his photo albums. He asked for a receipt so he could report the damage to his photo albums. Cordero also stated he wanted to report Galaviz for stealing his documents. *Id.* at 14. Camacho got angry at Cordero's request and told him that if he were to push the issue and report them he would write Cordero up for possessing contraband. Cordero responded "What contraband? There's no contraband in our cell. I want my cell search receipt." *Id.* at 14.

Cordero states Camacho got increasingly irate. Pl.'s Decl. at ¶ 12. Cordero heard the "tray slot" open and he saw Camacho put his hand through the slot with a can of pepper spray. Camacho then sprayed both Cordero and his cellmate. *Id.*; FAC at 14. Cordero

---

[5] The alleged misconduct in the note did not pertain to Cordero but alleged Camacho had "hired" an inmate to assault another inmate. FAC at 11.

dropped to the ground but Camacho continued to yell, "Get the fuck down!" while he sprayed him. FAC at 14. Camacho then turned the pepper spray on Cordero's cellmate. After a short time, Camacho turned his attention back to Cordero and sprayed him a second time, despite Cordero already being on the ground. Camacho then had Bailey give him another can of pepper spray, which he used to spray Cordero and his cellmate a third time. *Id.* at 15.

Camacho then ordered Cordero to crawl backwards out of the cell and he complied. By that time Galaviz and Gutierrez had arrived. Camacho told Galaviz and Gutierrez to take Cordero to holding cages in the gym. *Id.* at 15. While being escorted, Galaviz "slammed [Cordero's] head into the wall" and stated: "Fuckin' piece of shit, Cordero, tellin' on us." *Id.* at 15. During the walk to the gym, Gutierrez repeatedly told Cordero to "stop resisting" (Pl.'s Decl. at ¶16) and jerked Cordero's body "to make it look like he was resisting." FAC at 15. Cordero states he believes this was to bait him into fighting back so they could use even more physical force against him in retaliation for reporting staff misconduct to an attorney. *Id.* at 15–16. At some point, Gutierrez "stole" Cordero's address book and a letter he had written addressed to the law firm of the attorney he had spoken to previously. *Id.* at 16.

Once in the gym, Cordero asked for decontamination to wash the pepper spray off his face and body. *Id.* at 16. He was in extreme discomfort and distress. Gutierrez told another officer not to decontaminate Cordero. *Id.* Galaviz told Cordero to refuse medical treatment and not to report his injuries. Galaviz also falsely told medical staff that Cordero had refused decontamination. Cordero states that while he was having trouble breathing and crying out in pain, Galaviz and Gutierrez laughed at him and failed to summon help. *Id.* at 16.

Later, Cordero alleges, Camacho attempted to justify pepper spraying Cordero by filing a false claim of battery against him. Camacho submitted a rule violation report stating Cordero had punched his cell door window so hard it broke the glass and caused a fragment to hit Camacho, and that he only used the pepper spray because he feared for his safety. *Id.*

at 102; *see also* Pl.'s Decl. 19–20. Cordero alleges he had no injuries to his hand and Camacho concocted the false allegation to justify his unnecessary use of pepper spray. Pl.'s Decl. at ¶ 20, 22–23.

Cordero further alleges his access to courts was obstructed when RJD and SAC officials failed to properly handle his legal mail. FAC at 18–19. He states that on January 31, 2021, while still an inmate at RJD, several "Doe" Defendants failed to properly mail a petition for writ of habeas corpus to the San Diego County Superior Court. *Id.* at 18. Cordero addressed the petition to the "San Diego Superior Court at 220 W. Broadway in San Diego, California 92101." *Id.* at 18. Eight days later, on February 8, 2021, the envelope was returned to Cordero with a stamp stating, "Return to Sender." *Id.* Other notations on the envelope stated "not at this address" and "vacant lot." *Id.*

Further, Cordero alleges that on June 16, 2021, after he was transferred to SAC, Correctional Officer G. Johnson and Does 11–20 failed to properly handle his legal mail. *Id.* at 19. Cordero states that he attempted to send documents related to a civil rights complaint filed pursuant to 42 U.S.C. § 1983 in case number 5:21-cv-0444-JAK-ADS to the United States District Court for the Central District of California. *Id.* at 19, 101. Johnson told him he "doesn't do legal mail" and to just put the mail, which included the complaint, in the "mail bag" without being sealed properly. *Id.* at 19. Cordero claims the complaint "never made it to the Central District." *Id.* Cordero filed a grievance the next day, stating that Johnson told him he "could have 2nd Watch" sign for the outgoing legal mail later that day or he could mail it with Johnson by putting it in the mail bag unsealed. *Id.* at 101. Cordero declined to give the mail to Johnson unsealed. *Id.*

In his FAC, Cordero alleges Defendants Camacho, Bailey, Galaviz, Gutierrez and Kako: (1) used excessive force and/or failed to protect him, in violation of his Eighth Amendment rights and (2) retaliated against him in violation of his First Amendment rights. *Id.* at 2. He also contends Galaviz and Gutierrez were deliberately indifferent to his serious medical needs after he was pepper sprayed, in violation of the Eighth Amendment. *Id.* at 5. Further, he alleges RJD Doe Defendant #1 retaliated against him by failing to

process his grievance; and that RJD Doe Defendants #2–10, SAC Doe Defendants #11–20 and Johnson interfered with his legal mail in violation of his First Amendment right to access to courts. *Id.* at 3. Finally, he argues Defendants are liable under California tort law and the California Penal Code. *Id.* at 4. He seeks compensatory and punitive damages of $3,000,000 each, as well as injunctive relief. *Id.* at 21.

C. 42 U.S.C. § 1983

Section 1983 is a "vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) ("[M]unicipalities and other local governmental units … [are] among those persons to whom § 1983 applies."). To state a claim under section 1983, Plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frey*, 789 F.3d 1030, 1035–36 (9th Cir. 2015).

1. Legal Mail and Access to Courts

Cordero alleges that Doe Defendants #2-10 at RJD, Johnson and Doe Defendants #11-20 at SAC violated his First Amendment rights by hindering his access to courts. FAC at 18–19. Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977). To establish a claim for any violation of the right of access to the courts, the prisoner must prove that there was an inadequacy in the prison's legal access program that caused him an actual injury. *See Lewis*, 518 U.S. at 349–51. To prove an actual injury, the prisoner must show that the inadequacy in the prison's program hindered his efforts to pursue a non-frivolous claim concerning his conviction or conditions of confinement. *See id*. at 351, 354–55.

Prisoners enjoy a First Amendment right to send and receive mail. *See Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)). A prison, however, may adopt regulations or practices which impinge on a

prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." *See Turner v. Safley*, 482 U.S. 78, 89 (1987). The *Turner* standard applies to regulations and practices concerning all correspondence between prisoners and to regulations concerning incoming mail received by prisoners from non-prisoners. *See Thornburgh*, 490 U.S. at 413.

Prison officials may institute procedures for inspecting "legal mail," e.g., mail sent between attorneys and prisoners, *see Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974) (incoming mail from attorneys), and mail sent from prisoners to the courts, *see Royse v. Superior Court*, 779 F.2d 573, 574–75 (9th Cir. 1986) (outgoing mail to court). But "prisoners have a protected First Amendment interest in having properly marked legal mail opened only in their presence." *Hayes v. Idaho Correctional Center*, 849 F.3d 1204, 1211 (9th Cir. 2017); *see also O'Keefe v. Van Boening*, 82 F.3d 322, 325 (9th Cir. 1996) (finding the opening and inspecting of "legal mail" outside the presence of the prisoner may have an impermissible "chilling" effect on the constitutional right to petition the government).

"Legal mail" may not be read or copied without the prisoner's permission. *See Casey v. Lewis*, 43 F.3d 1261, 1269 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 343 (1996). The Ninth Circuit has emphasized that there is a clear difference between inspecting outgoing legal mail for contraband and reading it under *Wolff*, 418 U.S. 539 at 577, such that prison officials may not circumvent this prohibition by reading an inmate's outgoing legal mail in his presence because this practice does not ameliorate the chilling effect on the inmate's Sixth Amendment rights. *See Nordstrom v. Ryan*, 762 F.3d 903, 911 (9th Cir. 2014) (*Nordstrom I*) (reversing district court's dismissal of the complaint for failure to state a claim after finding complaint stated a cognizable 6th Amendment claim based on prisoner's allegations that prison officials read his legal mail, that they claimed entitlement to do so, and his right to private consultation with counsel was chilled); *Nordstrom v. Ryan*, 856 F.3d 1265, 1272 (9th Cir. 2017) (*Nordstrom II*) (on appeal after remand of *Nordstrom I*, holding that prison policy requiring officials to confirm that outgoing letters qualified as legal mail failed to meet standard that officials may inspect but not read outgoing legal

mail). But again, prison officials may establish that legitimate penological interests justify the policy or practice. *See O'Keefe*, 82 F.3d at 327.

Here, Cordero alleges Doe Defendants #2–10 interfered with his legal mail at RJD. FAC, at 3. Specifically, he states that on January 31, 2021, he attempted to mail a state petition for writ of habeas corpus to the San Diego County Superior Court. *Id.* at 18. He alleges that on February 8, 2021, he received the envelope back stamped, "return to sender," "not at this address" and "vacant lot." *Id.* The five postal stamps on the envelope had not been "marked over by the meter from the U.S. Post Office [and] this gave [Cordero] the indication that [his] state habeas petition never made it out of the prison." *Id.* But Cordero must allege a deliberate delay of legal mail which adversely affects legal proceedings to present a cognizable claim for denial of access to the courts. *See Jackson v. Procunier*, 789 F.2d 307, 311 (5th Cir. 1986). Isolated instances of interference with mail without any evidence of improper motive have been found insufficient to state a constitutional claim. *See Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989) (finding negligent mishandling of inmate mail insufficient to state a constitutional claim); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990) (concluding isolated incidents of mail interference without any evidence of improper motive or resulting interference with the right to counsel or access to the courts do not give rise to a constitutional violation); *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) ("we have never held or suggested that an isolated, inadvertent instance of opening incoming confidential legal mail will support a § 1983 damage action"); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (an isolated incident of mail tampering is usually insufficient to establish a constitutional violation).

Cordero has included no allegations to suggest any wrongful conduct by any RJD Doe Defendant that resulted in the interference with the mail. He offers nothing but

speculation that the envelope "never made it out of the prison."[6] The "mere possibility" of interference or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting plausibility standard required to state a claim. *Iqbal*, 556 U.S. at 678. Moreover, Cordero fails to allege any facts to show "actual injury" "such as the inability to meet a filing deadline or to present a claim," with respect to any case. *Lewis*, 518 U.S. at 348; *Jones*, 393 F.3d at 936. In short, the FAC is devoid of any factual allegations of any conduct by RJD Doe Defendants #2–10 by which the Court could infer that Plaintiff's federal rights were violated. *See Iqbal*, 556 U.S. at 678.

Cordero has likewise failed to state an access to courts claim as to Johnson and SAC Doe Defendants #11–20. In his FAC, Cordero claims he attempted to mail legal documents in a civil rights case filed in the United State District Court for the Central District of California Case No. 5:21-cv-0444-JAK-ADS. FAC at 19, 101. Johnson refused to accept his legal mail unless it was unsealed but told Cordero that "2nd Watch" could accept it. *See id.* at 101. He admits he was told he could hand over the legal mail later that day. *Id.* Construing the FAC liberally, Cordero has, at most, alleged an isolated instance of interference with his mail without any evidence of improper motive on the part of Johnson or Does #11-20. This is insufficient to state a constitutional claim. *See Stevenson*, 877 F.2d

---

[6] Cordero states he addressed the envelope to San Diego County Superior Court at "220 W. Broadway, San Diego, Calif[ornia], 92101." FAC at 18. The Court takes judicial notice of the fact that the San Diego County Superior Court's location and mailing address is 1100 Union Street, San Diego, California 92101. *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that the court may take judicial notice of "undisputed matters of public record"). The San Diego location at 220 W. Broadway was closed in 2017 and the building demolished. *See* Public Notice, Sup. Ct of San Diego Cnty., "Closure of Courthouse Buildings ("Old Central Courthouse)/Transfer of Operations" at https://www.sdcourt.ca.gov/sites/default/files /sdcourt/general information/news/2017announcements/ 2017-5-12%2C%20public%20notice% 2C%20 closure%20of%20buildings%20%28central% 29.pdf (Mar.17, 2017) (visited April 19, 2022).

at 1441. In addition, he has not plausibly alleged that he suffered any actual injury, "such as the inability to meet a filing deadline or to present a claim." *See Lewis*, 518 U.S. at 348. Indeed, the civil case he states he was attempting to pursue, United State District Court for the Central District of California Case No. 5:21-cv-0444-JAK-ADS, is this very case. The Central District transferred the case to this Court on September 14, 2021 and it was given the instant case number. *See* ECF No. 14. Thus, Plaintiff has not alleged actual injury. *See Lewis*, 518 U.S. at 348.

In sum, Cordero has failed to state an access to courts claim as to RJD Doe Defendants #2–10, Johnson and SAC Doe Defendants #11–20. *See Lewis*, 518 U.S. at 349–51; *Iqbal*, 556 U.S. at 678. Johnson and the Doe Defendants #2–20 are dismissed without prejudice.

### 2. Doe Defendant #1

Construing Cordero's FAC liberally, he appears to allege Doe Defendant #1, identified as an RJD "Appeals Coordinator," retaliated against Cordero by failing to process his grievance expeditiously. FAC at 7. Plaintiff states he filed a staff complaint related to misconduct by Parsons and Parker on July 9, 2020 and received a response, which was issued on September 17, 2020, concluding there was no finding of misconduct. *Id.* at 7, 44–46. Cordero alleges the delay in response prevented him from pursuing his grievance to the "next level." *Id.* at 7.

"Of fundamental import to prisoners are their First Amendment 'right[s] to file prison grievances.'" *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003). The Constitution provides protection against "[d]eliberate retaliation" by prison officials interfering in an inmate's exercise of his right to petition for redress of grievances. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). A First Amendment retaliation claim has five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th

Cir. 2005). To state a claim, a plaintiff must plead facts which suggest that retaliation for exercise of protected conduct was the "substantial" or "motivating" factor behind the defendants' conduct. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989.) Mere conclusions of hypothetical retaliation will not suffice; rather, a prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562, n.1 (10th Cir. 1990).

Here, Cordero has failed to allege any facts to support his claim that Doe Defendant #1 interfered with his ability to file grievances. Indeed, Cordero's July 9, 2020 grievance in Appeal #18480 was processed and a decision issued on September 17, 2020. FAC at 44–46. Cordero continued to file inmate grievances during that timeframe. For instance, he filed grievances related to various problems he was having at RJD on August 11, 2020, August 13, 2020, August 20, 2020; another on September 10, 2020. *See* FAC at 47, 51–54. Cordero's allegations are insufficient to state claim against Doe Defendant #1. *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678. Therefore, Doe Defendant #1, identified as "Appeals Coordinator" at RJD, is dismissed without prejudice.

### 3.    Remaining Constitutional Claims/Defendants

Cordero's remaining constitutional claims involve Camacho, Bailey, Galaviz, Gutierrez and Kako and the August 21, 2020 incident at RJD. *See* FAC at 10–17. He alleges his Eighth Amendment rights were violated when (1) Camacho, Bailey, Galaviz and Gutierrez used excessive force against him, (2) Kako failed to protect him, and (3) Gutierrez and Galaviz prevented him from getting adequate medical attention. He also contends all five Defendants retaliated against him in violation of his First Amendment rights. *Id.*

As pleaded, the Court finds the FAC contains plausible Eighth Amendment claims against Camacho, Bailey, Galaviz, Gutierrez and Kako, sufficient to survive the "low threshold" set to withstand the sua sponte screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *see also Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (holding that in determining whether a defendant has used

excessive force in the prison context, courts must consider: (1) the need for application of force; (2) the relationship between the need and the amount of force used; (3) the extent of the injury inflicted; (4) the threat "reasonably perceived by the responsible officials"; and (5) "any efforts made to temper the severity of a forceful response"); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (holding a failure-to-protect claim requires that (1) the condition complained of be shown to present a substantial risk of serious harm, and (2) the defendant be shown to have possessed a sufficiently culpable state of mind); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (holding that to state a claim based on inadequate medical care, a plaintiff must allege facts sufficient to demonstrate defendants acted with "deliberate indifference" to his serious medical needs). Moreover, the FAC as pleaded alleges plausible First Amendment retaliation claims against Camacho, Bailey, Galaviz, Gutierrez and Kako, sufficient to survive the screening required under 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Rhodes*, 408 F.3d at 567–68.

D.   State Tort Claims

To the extent Cordero alleges Galaviz and Gutierrez violated his rights under California civil law, the Court finds he has met the low threshold necessary to state a claim. *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678. These claims also survive screening pursuant to 28 U.S.C. Sections 1915(e)(2) and 1915A(b). *See Applegate v. Nkwocha*, No. 1:16-cv-00490-MJS (PC), 2016 WL 4126711, at *6–7 (E.D. Cal. Aug. 3, 2016) (allegations of interference with the ability to file grievances and right to medical care by threat of physical violence were sufficient to state Bane Act claim); *Miller v. Cal. Dep't of Corrs.*, No. 3:16-cv-2431-EMC, 2016 WL 3418522, at *3–4 (N.D. Cal. June 22, 2016) (concluding that pro se prisoner stated Bane Act claim against medical personnel who allegedly denied proper medical care and threatened to continue doing so in response to plaintiff's complaints); *Jett v. Penner*, 439 F.3d 1091, 1099 (9th Cir. 2006) ("In order to state a claim under [California Government Code] § 845.6, a prisoner must establish three elements: (1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care.")

### E.     California Penal Code

Finally, Cordero appears to seek criminal liability against Camacho, Bailey, Galaviz, Gutierrez under the California Penal Code sections 118.1, 136.1, 147, 149 and 153. *See* FAC at 4. Plaintiff cannot bring criminal charges against defendants through a civil lawsuit, and the California Penal Code does not give rise to a civil cause of action. Therefore, these claims are dismissed as frivolous as to all defendants.

## III.     Motion for Appointment of Counsel

On January 21, 2022, Plaintiff filed a Motion for Appointment of Counsel. ECF No. 25. There is no constitutional right to counsel in a civil case. *Lassiter v. Dept. of Social Servs.*, 452 U.S. 18, 25 (1981); *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). And while 28 U.S.C. § 1915(e)(1) grants the district court limited discretion to "request" that an attorney represent an indigent civil litigant, *Agyeman v. Corr. Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004), this discretion may be exercised only under "exceptional circumstances." *Id.*; *see also Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). A finding of exceptional circumstances requires the Court "to consider whether there is a 'likelihood of success on the merits' and whether 'the prisoner is unable to articulate his claims in light of the complexity of the legal issues involved.'" *Harrington v. Scribner*, 785 F.3d 1299, 1309 (9th Cir. 2015) (quoting *Palmer*, 560 F.3d at 970).

While it is too early for the Court to determine Plaintiff's likelihood of success on the merits, he fails to establish the requisite "exceptional circumstances" that would warrant appointment of counsel. A plaintiff is only entitled to appointed counsel if he can show "that because of the complexity of the claims he [is] unable to articulate his positions." *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), overruled on other grounds, 154 F.3d 952 (9th Cir. 1998) (en banc); *see also Taa v. Chase Home Fin.*, 2012 WL 507430, at *2 (N.D. Cal. Feb. 15, 2012) (noting that plaintiffs' lack of legal training and poverty did not constitute exceptional circumstances, as these are the types of difficulties many other litigants face in proceeding in pro se); *see also LaMere v. Risley*, 827 F.2d 622, 626 (9th Cir. 1987) (affirming a district court's denial of request for

appointment of counsel where pleadings demonstrated petitioner had "a good understanding of the issues and the ability to present forcefully and coherently his contentions").

Cordero has not established that this case is "exceptional" or that the issues in it are particularly complex. Cordero states that he requires assistance of counsel because he suffers from anxiety, depression and PTSD. ECF No. 25 at 2. While the Court is sympathetic to Plaintiff's mental illnesses, it is an insufficient reason to appoint counsel. *See Jones v. Kuppinger*, No. 2:13-cv-0451-WBS-AC, 2015 WL 5522290, at *3–*4 (E.D. Cal. Sept. 17, 2015) (stating "[c]ircumstances common to most prisoners, such as a deficient general education, lack of knowledge of the law, mental illness and disability, do not in themselves establish exceptional circumstances warranting appointment of voluntary civil counsel."); *see also Himes v. Gastelo*, No. 2:18-cv-00327-PSG-MAA, 2019 WL 9044693, at *2 (C.D. Cal. June 20, 2019) (denying motion for appointment of counsel for plaintiff who was housed in the mental health unit and being treated by a psychologist for mental illness); *Baker v. Grant*, No. 17-cv-1678-RSL, 2018 U.S. Dist. LEXIS 109376, at *2–4 (W.D. Wash. June 29, 2018) (denying motion to appoint counsel for plaintiff who was bipolar, schizophrenic, and had a possible brain injury because he demonstrated an adequate ability to articulate his claims pro se). The other factors Plaintiff claim indicate exceptional circumstances—indigency, incarceration, and being a layman untrained in the law—are difficulties that any imprisoned litigant would have in proceeding pro se; they do not indicate exceptional factors. *See Wood v. Housewright*, 900 F.2d 1332, 1335–36 (9th Cir. 1990) (upholding denial of appointment of counsel where plaintiff complained that he had limited access to law library and lacked a legal education).

Therefore, the Court finds no "exceptional circumstances" currently exist and **DENIES** Plaintiff's Motion to Appoint Counsel (ECF No. 25) without prejudice.

## IV.   Conclusion and Order

Good cause appearing, the Court:

1.     **DISMISSES** all claims against Defendants G. Johnson and Does #1–20

without prejudice for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).

2. **DENIES** Plaintiff's Motion for Appointment of Counsel without prejudice. (ECF No. 25.)

3. **DIRECTS** the Clerk to issue summonses as to Plaintiff's First Amended Complaint (ECF No. 22) upon Defendants F. CAMACHO, M. BAILEY, GALAVIZ, ABRAHAM GUTIERREZ, and KAKO and forward it to Plaintiff along with a blank U.S. Marshal Form 285 for each of these Defendants. In addition, the Clerk will provide Plaintiff with certified copies of this Order, certified copies of his First Amended Complaint and Plaintiff's Declaration in Support of the FAC (ECF Nos. 22 and 23), and the summons so that he may serve the Defendants. Upon receipt of this "IFP Package," Plaintiff must complete the USM Form 285s as completely and accurately as possible, include an address where each Defendant may be found and/or subject to service pursuant to S.D. Cal. CivLR 4.1c., and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

4. **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon Defendants F. CAMACHO, M. BAILEY, GALAVIZ, ABRAHAM GUTIERREZ, and KAKO upon receipt and as directed by Plaintiff on the completed USM Form 285s, and to promptly file proof of service, or proof of any attempt at service unable to be executed, with the Clerk of Court. *See* S.D. Cal. CivLR 5.2. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

5. **ORDERS** Defendants F. CAMACHO, M. BAILEY, GALAVIZ, ABRAHAM GUTIERREZ, and KAKO, once they have been served, to reply to Plaintiff's Complaint within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has

made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond).

      6.    **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendants, or if appearance has been entered by counsel, upon Defendants counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been served on Defendants or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk or which fails to include a Certificate of Service upon the Defendants, or their counsel, may be disregarded.

      **IT IS SO ORDERED.**

Dated:  April 26, 2022

_____

Honorable Linda Lopez
United States District Judge